# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>   v.<br><br>ROBERT LOPEZ ROCHA,<br><br>                         Defendant. | Case No. 18-cr-04180-BAS-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT (ECF No. 69)** |

On December 10, 2019, the Court sentenced Mr. Rocha to 63 months in custody, concurrent on both counts, of which he has served approximately 28 months. (ECF No. 58.) Mr. Rocha now moves to reduce his sentence to time served arguing that his medical conditions place him at severe risk if he were to contract COVID-19. (ECF No. 69 ("Defendant's Motion").) The Government opposes. (ECF No. 72 ("Government's Response").) For the reasons stated below, the Court **DENIES** Mr. Rocha's request.

## I.  BACKGROUND

On August 30, 2018, Mr. Rocha drove through the Port of Entry from Mexico to the United States in a car with a non-factory compartment containing 7.42 kilograms of heroin and 20.9 kilograms of methamphetamine. (ECF No. 28 ("PSR") ¶¶ 3–8.) At the time, he also had on his person two small bags of methamphetamine, two marijuana joints, a glass pipe, two cell phones and $310. (*Id.*) Although Mr. Rocha admitted using

methamphetamine a couple of days before his arrest, post-arrest, he denied knowledge of the drugs in his car. (*Id.*)

For the past forty years, Mr. Rocha has suffered a conviction every ten years for importing drugs into the United States. He was convicted of importing marijuana in 1974, 1988, 1992 and 2006. (PSR ¶¶ 29–38.) He also has two convictions for felony car theft and numerous arrests for alien smuggling. (PSR ¶¶ 29–38, 45–50.)

Mr. Rocha, who is 66 years old, is morbidly obese and suffers from uncontrolled diabetes, high blood pressure, Hepatitis C, hypertension, asthma, and liver disease. (PSR ¶¶ 60–63; Defendant's Motion, Exh. A.) He was hospitalized twice for abnormal fluid in the abdomen caused by cirrhosis of the liver. (*Id.*) He also has serious mental health issues including suicide attempts and serious drug addiction issues. (PSR ¶¶ 64–69, 70–75.)

Mr. Rocha is being housed at FCI Lompoc. The Government argues that measures have been taken at Lompoc to curb the spread of coronavirus. (Government's Motion.) Currently, there are no inmates and two staff members who are testing positive at this facility. *See* Bureau of Prisons ("BOP"), Covid-19 Cases, http://www.bop.gov/coronavirus (last visited Jan. 14, 2021). Mr. Rocha himself tested positive for the virus on April 16, 2020, but he was asymptomatic. (Defendant's Motion, Exh. A at 16–19). During his two hospitalizations mentioned above in September and December 2020, he continued to test positive for COVID-19. (Defendant's Motion, Exh. A at 2–3.) The Government indicates that, as of January 8, 2021, 19 BOP facilities, including Lompoc, have received vaccines to be rolled out first to staff and then to inmates. (Government's Response.) Thus, Mr. Rocha is likely to receive a vaccine soon.

On October 23, 2020, Mr. Rocha claims he sent a request for compassionate release to the Warden at FCI Lompoc. (Defendant's Motion, Exh. D.) However, the Government files a Declaration of Theresa Talplacido, a Senior Attorney at MCC with access to Defendant's administrative remedy history. (Government's Motion, Exh. 3.) She has reviewed Mr. Rocha's administrative remedies history and has found no request for Compassionate Release filed at his facility. (*Id.*)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* In other words, Mr. Rocha must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

There is some question whether Mr. Rocha exhausted his administrative remedies. Although he provides a copy of a request for compassionate release that he allegedly sent to the Warden at FCI Lompoc (Defendant's Motion, Exh. D), he does not indicate whether the Warden acted on this request or, if the result was a denial, whether he appealed that denial. Furthermore, the Government presents evidence that no request was filed. (Government's Response, Exh. 3.)

Therefore, the Court does not believe that Mr. Rocha has shown adequate evidence that he exhausted his administrative remedies. However, since the Court ultimately finds that compassionate release is not warranted, the Court addresses the additional prongs below.

### B.      Extraordinary and Compelling Circumstances

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(a).  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

First, the Court acknowledges what ought to be obvious by now:  COVID-19 is posing a serious threat throughout the United States, but particularly within the BOP system.  Although the BOP is doing its best to keep the disease in check, the forced closeness of inmates and staff and the inability to enforce social distancing standards has made it difficult to keep the virus contained.  At FCI Lompoc where Mr. Rocha is being housed, there was a serious outbreak last year, but the BOP is doing an admirable job of containing the virus.  No inmates are reportedly positive, and only two staff members are testing positive. *See* BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited Jan. 14, 2021).

Nonetheless, Mr. Rocha has a laundry list of medical conditions, notably type-2 diabetes, high blood pressure, hepatitis C, hypertension and asthma.  He is also obese and over 65 years old. (PSR ¶¶ 60–63; Defendant's Motion, Exh. A.)  All of these conditions Place Mr. Rocha at higher risk from the virus. *See* Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

However, Mr. Rocha had COVID-19 last April and was asymptomatic. (Defendant's Motion, Exh. A at 16–19.)  Courts have split on the issue of whether an individual who has recovered from COVID-19 can still show extraordinary circumstances. In *United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *2 (W.D. Wash.

June 29, 2020), the court found "we do not know to what degree or duration persons are protected against reinfection . . . following recovery from COVID." *Id.* (citing CDC, *Clinical Questions About COVID-19: Questions and Answers*, http://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (then last updated June 4, 2020)). "People could be immune from reinfection entirely, partially, or not at all." *Id.* (citing Paul Kellam & Wendy Barclay, *The Dynamics of Humoral Responses Following SARS-Cov-2 Infection and the Potential for Reinfection*, J. Gen. Virology (May 2020), at 1; Erin Garcia de Jesus, *New Data Suggests People Aren't Getting Reinfected with the Coronavirus*, Science News (May 19, 2020), http://www.sciencenews.org/article/coronavirus-COVID-19-reinfection-immune-response; Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection But Not For Long*, N.Y. Times, https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (then last updated June 20, 2020)). Thus, the court concluded the possibility that a defendant might get re-infected and, the next time around, suffer more severe consequences, was too speculative to warrant relief. *Id.*

On the other hand, in *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020), the court concluded, "while Mr. Yellin's medical record states he recovered from COVID-19, the possibility of reinfection persists." As the court points out in *Yellin*, the medical evidence is still uncertain as to the effect of a recovery on future infection. Ultimately, the court in *Yellin* concluded: "The Court does not presume to have more information than the experts researching this virus. Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, the Court must err on the side of caution to avoid potentially lethal consequences for Mr. Yellin." *Id.*

Factored into this mix is the likelihood that Mr. Rocha will receive the vaccine to prevent the coronavirus soon. Given the fact that none of the inmates at Lompoc are currently infected, that Mr. Rocha would be an outlier if he was reinfected with the virus and had a stronger reaction the second time around, and that he is likely to get a vaccine

soon, the Court is not convinced that the threat of COVID-19 constitutes "extraordinary and compelling" circumstances justifying Mr. Rocha's release. Additionally, as discussed below, the Section 3553(a) factors do not support such a release.

### C. Section 3553(a) Factors

Mr. Rocha has served less than half of his 63-month sentence. He imported large amounts of heroin and methamphetamine into the United States. More importantly, this is his fifth conviction for importing drugs into the United States. Admittedly, his earlier convictions are for importing marijuana, but they show his connection to drug trafficking organizations and his inability to stay out of criminal trouble. Additionally, Mr. Rocha has convictions for felony car theft and arrests for alien smuggling. Clearly, a longer sentence is necessary to deter Mr. Rocha's criminal conduct and to protect the public from further criminal activity.

In addition, Mr. Rocha has serious, untreated drug addiction and mental health issues. At this point, given the current surge in coronavirus cases, it would be difficult for Mr. Rocha to get sufficient support for these problems and to keep him out of trouble. While he is in custody, he is eligible for drug treatment programs that are likely to open up after COVID-19 vaccinations have taken hold. Thus, the Court finds release would not protect the public from further crimes by Mr. Rocha.

Finally, release of an individual with Mr. Rocha's criminal record, who was convicted of importing drugs in the quantities he possessed, would create unwarranted disparities with other similarly situated defendants.

Therefore, the Court concludes that the Section 3553(a) also weigh against releasing Mr. Rocha.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Reduce His Sentence Pursuant to the First Step Act. (ECF No. 69.)

**IT IS SO ORDERED.**

**DATED: January 14, 2021**

Hon. Cynthia Bashant
United States District Judge